DOC NO
REC'D/FILED

**UNITED STATES DISTRICT COURT** 8  AM 8: 51
**WESTERN DISTRICT OF WISCONSIN**
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Establishment Inspection of:                          :          Case No. 14 mc 19-slc

                                                      :

**GREDE WISCONSIN SUBSIDARIES, LLC**          :

                                                      :

                                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPLICATION FOR INSPECTION WARRANT
## UNDER THE OCCUPATIONAL SAFETY
## AND HEALTH ACT OF 1970

To the Honorable United States Magistrate Judge:

AMANDA KUPPER, a duly authorized Compliance Safety and Health Officer (CSHO) of the Occupational Safety and Health Administration (hereinafter "OSHA"), United States Department of Labor, hereby applies for an inspection warrant, pursuant to section 8 of the Occupational Safety and Health Act of 1970 (29 U.S.C. 651 et seq.) ("OSH Act"), hereinafter referred to as the Act, and the Regulations issued pursuant thereto, for the safety and health inspection and investigation of the place of business of Grede Wisconsin Subsidiaries, Inc. (hereinafter "Grede") and described as follows:

> **Grede Wisconsin Subsidiaries, Inc.**
> **N2480 Cty Hwy M**
> **Browntown, WI 53522**

In support of this Application, the applicant shows as follows:

1.      The aforesaid worksite houses the workplace of employees who are employed by an employer, believed to be engaged in a business affecting commerce, and is subject to the requirements of the Act.

2.      This application is based upon my review of OSHA records, reports, and information learned and observed when I attempted to conduct an inspection at one of Grede's

facilities, located at N2480 Cty Hwy M, Browntown, WI 53522 (the "Browntown Facility" or "Facility"). .

3.       On October 8, 2014, the OSHA Area Office received a complaint from a complainant who was knowledgeable of specific alleged hazardous conditions at Grede's worksite and who indicated that he/she did not want his/her name revealed. On October 9, 2014, an email from the complainant was received and a typewritten transcript of the complaint was prepared on an OSHA Form 7 (attached hereto as Exhibit A) summarizing the hazards which were reported to wit:

- **Employees cleaning the basement are not provided adequate respiratory protection.**

4.       Grede's has a history with OSHA in regard to its employees being overexposed to Silica. Between August 1, 2012 and January 31, 2013, OSHA conducted an inspection of Grede's Browntown Facility. As a result of this inspection, OSHA cited Grede for the following: overexposing its employees to silica [29 CFR 1910.1000(c) and 29 CFR 1910.1000(e)], a lack of hazard communication training [29 CFR 1910.1200(h)(1)], a lack of proper respirator selection [29 CFR 1910.134(d)(1)(i) and 29 CFR 1910.134(d)(3)(i)(B)(1)], and a lack of fit testing [29 CFR 1910.134(f)(2)], and other deficiencies noted in their safety and health program. See Citation issued dated February 1, 2013, attached as Exhibit B. The overexposure of silica and related citations occurred because its employees were conducting clean-up operations by shoveling sand in the sand reclamation system located in the basement of the Browntown Facility. When OSHA conducted air sampling of this basement during the 2011 inspection, OSHA found that the respiratory protection provided to Grede's employees was not adequate to protect them from the overexposure to silica.

5.     On October 10, 2014, I opened an OSHA inspection of Grede's Browntown Facility.   When I arrived at the Facility, I held an opening conference with Melody Dagle, Grede's HR Representative, and Bob Schroeder, the Facility's Safety Manager.   During this conference, I explained that I was there to conduct an inspection because an individual filed an OSHA complaint against Grede regarding the safety hazards identified in paragraph 3.   I discussed and reviewed the complaint item with Mr. Schroeder.  I informed Mr. Schroder that an inspection requires me to conduct air sampling while employees were shoveling in the basement of the Facility.  Mr. Schroeder informed me that he needed to speak to Mr. Peter Mark, Grede's Corporate Safety Director, before I was allowed to conduct the inspection.  He further informed me that Grede's safety consultant needed to be present before I could start any air sampling of in the basement

6.     After waiting for about an hour, I informed Mr. Schroeder that I needed to conduct eight hours of air sampling while the employees were conducting clean-up operations in the basement.  I explained to Mr. Schroeder that eight hours of sampling data was needed to be taken to determine if the employees were overexposed to silica in violation of 29 CFR 1910.1000(c) and 29 CFR 1910.1000(e).  I further explained that if I am unable to sample for eight hours, I will not have enough sample data to make a determination as to whether employees were overexposed to silica per the regulation.  Mr. Schroeder cooperated by bringing nine employees to the conference room so that I could fit each employee with a sampling device, which would produce data that could be analyzed to determine the employee's exposure to silica. At that time, Mr. Schroeder informed me that these employees were going to shovel sand in the basement for three hours because that was the time necessary to complete this task.  After about one hour and thirty minutes of sampling, however, I learned that the employees stopped cleaning

3

up because they were told by, Fred Sulzer, their supervisor, that they were done with the clean-up work. I did not know if the employee were actually shoveling in the basement because I was not able to enter it given the known danger associated with the basement. The employees returned the sampling equipment to me at that time.

7.      Although I was unable to obtain a sufficient amount of sampling data to make a determination, the one hour and thirty minutes of sampling data that I did obtain was enough data to find that Grede may be in violation of 29 CFR 1910.1000(c) and 29 CFR 1910.1000(e) (for allowing its employees to be overexposed to silica) had I been able to take a full eight hours of sampling data. Specifically, the data indicated that two of the employees sampled were exposed to silica levels in excess of the OSHA permissible exposure limit for the time sampled. See Sampling Data, attached as Exhibit C.

8.      After I removed the sampling equipment on the employees, I conducted employee interviews. I learned from these interviews the following:

- There were several feet of sand (in depth) still left in the basement;

- The employees had been in the basement conducting cleanup operations or "shoveling" several times in the last few months, including several hours before the inspection, because the onsite vacuum system was no longer functioning;

- Employees were given N95 half-mast filtering face-piece respirators;

- Rudy Jansen, a Department Manager, reassigned the employees, who were originally assigned to sweep and clean up the sand in the basement and were fitted with sampling equipment, to another location at the facility;

4

- Two of the employees, who were fitted with sampling equipment and found to be exposed to silica above the OSHA permissible limits, were reassigned to sweep the sand on the floor and under equipment in an area above the basement; and

- The two employees reassigned to the area above the basement would likely have a lower exposure to silica than being assigned to the basement based on the amount of sand present and the environment of each of the areas.

9.    During the visit on October 10, 2014, I made request for several documents including Grede's own air sampling data, hazard communications program, respiratory protection program, OSHA 300 logs,[1] and respirator fit tests. All documents were provided prior to employee interviews with the exception of the fit test records.[2] After reviewing these records, I conducted additional employee interviews on October 29, 2014.

10.    Based on my review of the above-referenced complaint and the information that I had obtained during my inspection, I determined that the complaint item identified in paragraph 3 was specific in nature and location, and the existence of the complaint item could result in a threat of serious physical harm to Grede employees and that reasonable grounds exist to believe that violations of the Act or regulations issued thereunder would be found on the employer's premises. The specificity of this item satisfies administrative probable cause requirements.

---

1  OSHA Form 300 is a log of work-related injury and illness incidents. The OSHA 300 log classifies each incident and records the extent and severity of each case. The log also tracks days missed from work, restricted work activity or job transfers. OSHA regulations require businesses with 10 or more employees to maintain an OSHA 300 log every year. Work-related injuries and illnesses that must be logged on an OSHA 300 form are: deaths, loss of consciousness, more than three days away from work, those that restrict work activity or require a job transfer or those that require medical treatment beyond first aid.

2  On October 10, 2014, Heath Kluck, a HR and Safety Assistant for Grede, provided me with the respirator fit test records as I was preparing to exit the facility. However, after I conducted follow-up interviews, I determined that the records were falsified. On October 31, 2014, Dan Verschage, Grede's General Manager, informed Kim Stille, Madison OSHA Area Director that he was unaware of the false fit test records, Mr. Kluck has not reported to work in several days, and Mr. Kluck was not considered management.

11.    As the Seventh Circuit has cautioned, "[w]e must be ever mindful that the goal of OSHA is preventive, not remedial.   The reasonableness required of an OSHA warrant should thus be interpreted with this policy in mind and with a careful eye toward not requiring so much of an OSHA warrant application that the Fourth Amendment becomes an obstacle to common sense." *In re Establishment of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1341 (7th Cir. 1979), *cert. denied,* 444 U.S. 884 (1979).   Administrative probable cause to merit a health and safety inspection, the Secretary of Labor must show specific evidence of an existing violation of law or that neutral reasonable legislative and administrative standards for conducting an inspection are satisfied.  *In re Establishment of Cerro Copper Products Co.,* 752 F.2d 280 (7th Cir. 1985). Here, the hazard allegations are detailed in nature, specific in location, chronicle serious hazards capable of causing death or serious injury and OSHA believes that reasonable grounds exist to believe that violations of the Act or regulations issued thereunder will be found on Grede's premises.

12.    Moreover, in accordance with OSHA Directive CPL 02-00-150, "Field Operations Manual," Chapter 9, "Complaint and Referral Processing" (Exhibit D),[3] Area Director Kim Stille determined that the complaint item met the criteria for an on-site inspection as set forth at Chapter 9, paragraph C.5., as this complaint item identifies hazards covered by a National Emphasis Program.  Specifically, the complaint item is a hazard described and covered by the National Emphasis Program – Crystalline Silica ("NEP").   See Exhibit E, OSHA Instruction CPL 03-00-007, effective date January 24, 2008 ("The purpose of this NEP is to

---

3  Exhibit C, which became effective on April 22, 2011, is a federal OSHA instruction which establishes policies and procedures for handling complaints relating to workplace safety and health conditions.  A complaint inspection is an on-site examination of an employer's worksite that is initiated primarily as a result of a complaint; is conducted by an OSHA compliance officer at the employer's worksite, and meets at least of the criteria identified in Section I.C. "Criteria Warranting an Inspection" of Exhibit C.

significantly reduce/eliminate employee overexposures to crystalline silica and, therefore, control the health hazards associated with such exposures."). The NEP provides for the procedures for inspecting and documenting employee exposure to silica. Exhibit E, Section XI(B), "Inspection Procedures," and Appendix H, "CSHO Checklist for Conducting Silica-Related Inspections." In addition, the Madison OSHA Area Office follows the "Local Emphasis Program for Silica" ("LEP"), which sets forth further directions for OSHA to follow to reduce employee exposure to Silica within Region V (IL, IN, MI, MN, OH, and WI). See Exhibit F, OSHA Instruction CPL 04-00-016, effective date October 1, 2014.

13.     Grede is believed to be engaged in the business of metal casting production, which OSHA has determined falls under the North American Industry Classification System ("NAICS") No. 331511 – Iron Foundries. The NAICS code falls under the Standard Industrial Classification ("SIC") No. 3321 – Gray and Ductile Iron Foundries. SIC No. 3321 denotes a category of industry with the major industrial sources of crystalline silica exposure. See Exhibit E, Appendix B. The list is based on a review of inspection data from OSHA's Integrated Management Information System (IMIS) for crystalline silica (quartz), for the period January 1996 through March 2007. See Exhibit F, Appendix A.

14.     Further, OSHA is not aware of evidence that the Complainant is seeking to harass the employer. Rather, the information presented along with the fact that meets the administrative probable cause requirements.

15. OSHA has decided to seek an anticipatory warrant prior to re-initiating a full shift of personnel sampling during the existing safety and health inspection of Grede because the Area Director and the Regional Solicitor of the U.S. Department of Labor allege that the issuance of a pre-inspection warrant is necessary and appropriate in accordance with 29 CFR 1903.4(b).

16.     The requested safety and health inspection and investigation will extend only to those areas and/or hazardous conditions specified in the summary of the complaint attached hereto as Exhibit A,[4] as well as to any hazardous work areas, procedures and/or working conditions where work is performed or permitted to be performed by employees of the employer within the plain view of the Compliance Officer(s) during the course of the inspection, and to all pertinent conditions, structures, machines, apparatus, devices, equipment, materials and all other things therein, including a review of records required by the Act and/or directly related to the purpose of the inspection (but not including medical records as defined in 29 CFR §1910.1020(c)(6)(i)), and related to the hazardous safety and/or health conditions referred to in paragraph 3 of this Application For Inspection Warrant, and bearing on whether this employer is furnishing to its employees employment and a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act.

17.     The inspection and investigation will be conducted by one or more compliance officers designated by the Secretary of Labor, United States Department of Labor, to be her authorized representative(s), pursuant to proper and reasonable administrative standards contained in regulations duly issued by the Secretary under authorization granted in the Act and found in 29 CFR §1903.

18.     The onsite inspection and investigation will be conducted during regular working hours, within reasonable limits, and in a reasonable manner.   The compliance officer(s)'

---

4 The specific conditions will define the area they are located.  For example, the employer or employees can direct the Compliance officer to the location where the alleged hazardous condition exists, i.e., the basement of the Browntown Facility and the area where the two employees were sweeping sand on October 10, 2014.

credentials will be presented to the employer, and the inspection and investigation will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness, in accordance with Section 8(a) of the Act.

19.    The compliance officer(s) are authorized by Section 8(a)(2) of the Act to inspect and investigate the place of employment and to question privately any employer, owner, operator, agent, or employee of the establishment.  By regulation at 29 CFR 1903.7 and OSHA Instructions CPL 02-00-150, Chapter 3, Inspection Procedures," (OSHA Instructions attached hereto as Exhibit G), the compliance officer(s) are further authorized to take environmental samples, including samples taken by personal sampling device attached to employees, and to take or obtain photographs and/or videotapes related to the purpose of the inspection.

20.    The compliance officer(s) may be accompanied by a representative of the employer and a representative authorized by his employees, pursuant to section 8(e) of the Act.

21.    A return will be made to the Court at the completion of the inspection and investigation.

22.    The authority for issuance of the inspection warrant is section 8(a) of the Occupational Safety and Health Act of 1970 (29 U.S.C. 651 *et seq.*), and the regulations issued pursuant thereto in 29 CFR 1903.3 and 1903.4.  See *Marshall v. Barlow's Inc.*, 436 U.S. 307 (1978); *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970); *See v. City of Seattle*, 387 U.S. 541 (1967); *Camara v. Municipal Court*, 387 U.S. 523 (1967); *Reich v. Kelly-Springfield Tire Co.*, 13 F.3d 1160 (7th Cir. 1994); *In re Kohler Company*, 935 F.2d 810 (7th Cir. 1991); *In re Midwest Instruments*, 900 F.2d 1150 (7th Cir. 1990); *In re Cerro Copper Products Company*, 752 F.2d 280 (7th Cir. 1985); *Burkart Randall Div. of Textron, Inc. v.*

*Marshall*, 625 F.2d 1313 (7th Cir. 1980); *Marshall v. Chromalloy American*, 589 F.2d 1335 (7th

Cir. 1979).

AMANDA KUPPER
Compliance Safety and Health Officer
U.S. Department of Labor
Occupational Safety and Health
Administration

Subscribed and Sworn to before
me this _____ day of _____,
2014.

STEPHEN L. CROOKER
United States Magistrate Judge